# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                             No. CR 11-1946 JB

LINK KEPLER,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed December 5, 2011 (Doc. 30)("Sentencing Memorandum"). The Court held a sentencing hearing on January 20, 2012. The primary issue is whether the Court should accept the parties' stipulation that there is no factual basis to support the application of a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) that Defendant Link Kepler committed the felony offense involving methamphetamine in connection with his possession of a firearm. Because it does not appear that Plaintiff United States of America can prove by a preponderance of the evidence that this 4-level enhancement applies, the Court will grant the request in the Sentencing Memorandum and accept the parties' stipulation that this enhancement does not apply.

## FACTUAL BACKGROUND

On January 21, 2010, an officer with the Roswell, New Mexico Police Department was conducting a narcotics investigation that led him to a residence located at 808 W. 10th Street in Roswell, New Mexico. See Second Re-Disclosed Presentence Report ¶ 5, at 3, disclosed January 20, 2012 ("Second Re-Disclosed PSR"). At the residence, the officer encountered Kepler, who gave the officer consent to look through the residence on the condition that Kepler be allowed to

accompany the officer during the search.  See Second Re-Disclosed PSR ¶ 5, at 3.  The officer found a substance he suspected to be methamphetamine, as well as several items of drug paraphernalia in a room that was presumably Kepler's bedroom.  See Second Re-Disclosed PSR ¶ 5, at 3.  This bedroom was the only bedroom in the residence.  See Second Re-Disclosed PSR ¶ 5, at 3.  There were two other individuals in the home.  See Second Re-Disclosed PSR ¶ 5, at 3.  The officer observed drug paraphernalia to be near a black lock box in Kepler's bedroom.  See Second Re-Disclosed PSR ¶ 5, at 3.  The officer asked if he could look in the lock box, but Kepler refused to allow him to look into the box and stated that there were only baseball cards inside.  See Second Re-Disclosed PSR ¶ 5, at 3.  The officer noticed that Kepler appeared nervous and was pacing.  See Second Re-Disclosed PSR ¶ 5, at 3.  The officer secured the residence and subsequently obtained a search warrant for narcotics.  See Second Re-Disclosed PSR ¶ 5, at 3.  When Kepler and the other two people in the home were asked to leave the residence, Kepler became irate and began yelling obscenities.  See Second Re-Disclosed PSR ¶ 5, at 3.  Kepler and the other two individuals subsequently left the area in a vehicle.  See Second Re-Disclosed PSR ¶ 5, at 3.  A firearm was located in the black lock box.  See Second Re-Disclosed PSR ¶¶ 5-6, at 3.  Officers also seized 14.4 grams of methamphetamine in the lock box.  See Second Re-Disclosed PSR ¶ 6, at 3.

## PROCEDURAL BACKGROUND

Kepler, before the Honorable Carmen E. Garza, United States Magistrate Judge, pled guilty to the Indictment, filed July 20, 2011 (Doc. 18), charging him with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), that being felon in possession of a firearm and ammunition.  Kepler pled guilty without a plea agreement.  When Kepler pled guilty on September 21, 2011 before Judge Garza, the parties made an informal agreement that the sentence the Court imposes will run concurrently with a sentence he has received in state court.  See Plea Minute Sheet at 1, filed

September 21, 2011 (Doc. 28).

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Kepler on November 9, 2011.  In the PSR, the USPO calculates Kepler's total offense level to be 17.  See PSR ¶ 23, at 6.  The PSR applies a base offense level of 14 pursuant to U.S.S.G. § 2K2.1(a)(6).  See PSR ¶ 15, at 5.  The PSR includes a 4-level upward adjustment under U.S.S.G. § 2K2.1(b)(6) based on Kepler using or possessing "any firearm in connection with another felony offense," specifically possession with intent to distribute methamphetamine.  PSR ¶¶ 16-17, at 5-6. The PSR then proceeds to apply an offense level of 20 pursuant to U.S.S.G. § 2K2.1(c)(1).  See PSR ¶ 17, at 6.  The PSR notes: "During the execution of a search warrant at the defendant's residence, investigating officers found a handgun and 14.4 grams of methamphetamine inside a lock box next to the defendant's bed."  PSR ¶ 16, at 5.  The PSR states that U.S.S.G. § 2K2.1(c)(1) requires the application of the higher offense level of 20 under U.S.S.G. § 2X1.1 for attempt or conspiracy to distribute methamphetamine based on Kepler's possession of the firearm in connection with possession with intent to distribute methamphetamine.  See PSR ¶ 17, at 6.  The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Kepler's acceptance of responsibility.  See PSR ¶ 22, at 6.  The PSR lists his criminal history category as IV, based on 8 criminal history points.  See PSR ¶ 32, at 11.  The PSR calculates that an offense level of 17 and a criminal history category of IV results in a guideline imprisonment range of 37 to 46 months.  See PSR ¶ 56, at 15.

Kepler filed his Sentencing Memorandum on December 5, 2011.  Regarding the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6), Kepler states: "Counsel for both parties agree that there is no factual basis to support the 4-level upward adjustment."  Sentencing Memorandum at 1.  He notes that "[s]everal people were using the house in which the firearm was found."  Sentencing Memorandum at 1.  He asserts that "[t]he woman who was there is the one who had been making

the calls about meth." Sentencing Memorandum at 1. He comments that "[a]nother man was staying there, presumably it was his house." Sentencing Memorandum at 1. He argues that "[t]here is no proof that the meth and drug paraphernalia belonged to Mr. Kepler." Sentencing Memorandum at 1. He contends that "[i]t could belong to the other two who were in the residence that day." Sentencing Memorandum at 1. He states that, "[b]ecause the government could not prove that the meth and drug related items belonged to Mr. Kepler, the government agrees with counsel that a 4-level upward adjustment should not apply." Sentencing Memorandum at 1. He states that his offense level should instead be 13. See Sentencing Memorandum at 1.

On July 26, 2011, the USPO, in response to the Sentencing Memorandum, disclosed the Re-Disclosed Presentence Investigation Report. The Re-Disclosed PSR recalculates his total offense level as 12. See Re-Disclosed PSR ¶ 22, at 6. The Re-Disclosed PSR applies the same base offense level of 14. See Re-Disclosed PSR ¶ 15, at 5. The Re-Disclosed PSR does not apply a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) based on the parties' agreement "that it cannot be definitely proven that the drugs belonged to the defendant since other people were living in the residence." Re-Disclosed PSR ¶ 16, at 5. The Re-Disclosed PSR also does not apply an offense level of 20 pursuant to U.S.S.G. § 2X1.1 for attempt or conspiracy to distribute methamphetamine based on Kepler's possession of the firearm in connection with possession with intent to distribute methamphetamine. See Re-Disclosed PSR ¶¶ 16-22, at 5-6. The Re-Disclosed PSR also applies only a 2-level reduction for acceptance of responsibility. See Re-Disclosed PSR ¶ 21, at 6. The Re-Disclosed PSR recalculates that an offense level of 12 and a criminal history category of IV results in a guideline imprisonment range of 21 to 27 months. See Re-Disclosed PSR ¶ 55, at 15.

At the sentencing hearing on the morning of January 20, 2012, the Court inquired about the propriety of the parties' informal agreement that Kepler's state sentence will run concurrently with

-4-

his federal sentence. <u>See</u> Transcript of Hearing at 2:15-23 (taken January 20, 2012)(Court)("Tr.").[1]
The Court expressed its concern about the procedural correctness of having such an agreement when
the plea colloquy indicates that no agreement of any kind exists. <u>See</u> Tr. at 3:2-12 (Court).  The
Court suggested that the parties proceed before a magistrate judge with another plea colloquy to
recognize that a plea agreement exists. <u>See</u> Tr. at 3:15-19 (Court).  Kepler noted that his state
proceedings relating to the sentence for which he seeks concurrent sentences has already come to
a conclusion. <u>See</u> Tr. at 4:5-9 (Greek).  The Court also expressed concern that the PSR and the re-
disclosed PSR do not mention the convictions Kepler received as part of these state court
proceedings. <u>See</u> Tr. at 4:13-23 (Court).  Kepler clarified that the Re-Disclosed PSR refers to these
criminal proceedings in paragraph 29.  <u>See</u> Tr. at 4:24-25 (Greek).  Regarding any additional
criminal history points that would result from these convictions in state court, the Probation Officer
indicated that Kepler's criminal history points would increase by 1 to 9 points, but that his criminal
history category would remain a IV.  <u>See</u> Tr. at 6:4-13 (Probation Officer).  The Court then ordered,
after Kepler stated that had no objection, that the PSR be modified to reflect this change to Kepler's
criminal history points, but noted that the criminal history category would remain a IV.  <u>See</u> Tr. at
6:20-24 (Court, Greek).  The Court recessed the hearing so that the parties could proceed before a
magistrate judge to plead guilty pursuant to a plea agreement.

Judge Garza then conducted a plea colloquy where she asked if Kepler understood that the
oral plea agreement into which he was entering stipulated that his federal sentence would run
concurrently to his state sentence.  <u>See</u> Criminal Clerk's Minutes at 1, filed January 20, 2012 (Doc.
34).  Kepler and the United States both acknowledged that they accepted the plea agreement.  <u>See</u>

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Criminal Clerk's Minutes at 1.  On January 20, 2012, the USPO disclosed the Second Re-Disclosed PSR to update some information in the PSR consistent with the discussion at the morning session of the January 20, 2012 hearing.

When the Court reconvened the sentencing hearing on January 20, 2012, the Court inquired about the parties' stipulation that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) should not apply.  See Tr. at 11:6-19 (Court).  It inquired whether the United States felt comfortable drawing a line in terms of application of this enhancement in a situation where the United States can prove the defendant has possession of a gun in a lock box but not the drugs in the same lock box.  See Tr. at 11:13-19 (Court).  The United States asserted that, based on the facts of this case, it was comfortable drawing the line at this point and that it has thought throughout the case that it would not be able to prove that this enhancement applies.  See Tr. at 11:20-25 (Castellano).  The Court then accepted the parties' stipulation that the 4-level enhancement does not apply.  See Tr. at 12:1-11 (Court).  Kepler asked that the Court make the judgment reflect that his federal sentence will run concurrently to his state sentence.  See Tr. at 13:10-13 (Greek).

## LAW REGARDING U.S.S.G. § 2K2.1(b)(6)

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  Application note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1, cmt. n.14(A).

The United States Court of Appeals for the Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of

U.S.S.G. § 2K2.1(b)(6).  See, e.g., United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); United States v. Gomez-Arrellano, 5 F.3d 464, 467 (10th Cir. 1993).  In United States v. Bunner, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."[2]  134 F.3d at 1006.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender."  United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997).  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002)(per curiam).  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F.App'x 724, 727 (10th Cir. 2006)(unpublished)(holding enhancement applied where the defendant possessed firearm in connection with possessing methamphetamine).

In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.  See 199 F.App'x at 725-26.  The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search.

---

[2]U.S.S.G. § 2K2.1(b)(5) is now U.S.S.G. § 2K2.1(b)(6).  See U.S.S.G. § 2K2.1.

See <u>id.</u> at 726.  The defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  <u>See id.</u>  Nonetheless, the district court found, by a preponderance of the evidence, that the firearm was possessed in connection with felony possession of methamphetamine.  <u>See id.</u> at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'"  <u>Id.</u> (quoting with approval the district court).  The Tenth Circuit affirmed.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.  <u>See</u> <u>United States v. Condren</u>, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs"); <u>United States v. Cunningham</u>, No. 06-2493, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.).  Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered.  <u>See</u>, <u>e.g.</u>, <u>United States v. Washington</u>, 340 F.3d 222, 231 (5th Cir. 2003); <u>United States v. Green</u>, 255 F.App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and small amount of drugs for personal use); <u>United States v. Moran-Paz</u>, 35 F.App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  <u>See</u> <u>United States v. Gambino-Zavala</u>, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008).  In <u>United States v. Magallanez</u>, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after <u>United States v. Booker</u>, 543 U.S. 220 (2005), as long as the guidelines are considered advisory,

facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See
United States v. Magallanez, 408 F.3d at 684-685.  See also United States v. Dalton, 409 F.3d 1247,
1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance
of the evidence per se unconstitutional.").

## ANALYSIS

While the Tenth Circuit and other courts have reflected a liberal attitude towards applying
an enhancement under U.S.S.G. § 2K2.1(b)(6) when the defendant has a firearm in close proximity
to drugs, the United States still has the burden to prove that the defendant has committed a felony
drug offense.  U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense
level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or
ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  All of those
elements that support an enhancement are distinct.  See U.S.S.G. § 2K2.1(b)(6).  The United States
must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in
connection with; (iv) another felony offense.  See U.S.S.G. § 2K2.1(b)(6).

Unlike many cases, it is disputed whether Kepler committed another felony offense,
specifically a methamphetamine offense.  In prior cases before the Court where it has applied this
enhancement in the context of a felony drug offense, it was largely undisputed that the defendant
was the one responsible for the drugs.  See United States v. Hammons, 07-1164, 2012 WL 119616,
at *1, *16-17 (D.N.M. Jan. 12, 2012)(Browning, J.)(applying the enhancement under this guideline
when the defendant had admitted that the drugs in his vehicle were his drugs as opposed to the
passenger's); United States v. Cunningham, No. 06-2493, 2008 WL 6049940, at *3, *13-14 (D.N.M.
Oct. 29, 2008)(Browning, J.)(applying the enhancement where the defendant was carrying two bags
of crack cocaine on his person and admitted that they were his drugs).  While Kepler may have been

staying in the home, it is not clear who owned the home or what the role of the other people in the home was -- specifically whether they also lived in the home or whether they had any relationship with the methamphetamine.  The application of the enhancement would be more straightforward if no other people were in the home with Kepler.  The United States has represented that it cannot establish that this enhancement applies by a preponderance of the evidence and that the other people in the home may have been responsible for the drugs.  See United States v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the preponderance-of-the-evidence standard applies during sentencing).

While the Court is troubled that Kepler possessed a gun located in the same box with this methamphetamine, the United States has not presented any evidence regarding who owned the box.  While the available evidence might, in some circumstances, be enough to establish proximity and a connection to a drug crime, the Court cannot say that proximity to drugs always establishes commission of a felony drug offense when it is unclear who has possession of the drugs.[3]  The connection to a felony offense depends on the facts of the case.  Here, the presence of others in the house, the lack of evidence about who owns the box or the drugs, the lack of any evidence that Kepler was using methamphetamine, and the United States' assertions that it cannot prove by a preponderance of the evidence that the enhancement applies all support a conclusion that an enhancement under U.S.S.G. § 2K2.1(b)(6) should not apply.  Given that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many

---

[3]Many hypothetical scenarios would support this conclusion.  For example, a driver of a vehicle with three other occupants might illegally possess a firearm as a felon and, without the driver's knowledge, a passenger in the back seat might have heroin on his person.  Under those facts, the connection between the driver's possession of the firearm and the presence of the drugs in the vehicle would be too attenuated to support an enhancement under U.S.S.G. § 2K2.1(b)(6).

ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies. While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies. Consistent with the USPO's calculations in the Second Re-Disclosed PSR, reducing Kepler's offense level by 4 levels after removing the enhancement results in a total offense level of 12. See Second Re-Disclosed PSR ¶ 21, at 6. An offense level of 12 and a criminal history category of IV results in a guideline imprisonment range of 21 to 27 months.

IT IS ORDERED that the request to accept the parties' stipulation that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) does not apply contained in the Defendant's Sentencing Memorandum, filed December 5, 2011 (Doc. 30), is granted.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Kenneth J. Gonzales
   United States Attorney
Terri J. Abernathy
Donald F. Moore, Jr.
   Assistant United States Attorneys
Las Cruces, New Mexico

        Attorneys for the Plaintiff

Jane Greek
   Assistant Federal Public Defender
Federal Public Defender's Office
Las Cruces, New Mexico

        Attorney for the Defendant